JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Terry Blair, appeals from his conviction and sentence in the Cuyahoga County Court of Common Pleas on two counts of aggravated robbery in violation of R.C. 2911.01 with one- and three-year firearm specifications, and one count of intimidation in violation of R.C. 2921.04. For the reasons stated below, we reverse and remand.
 {¶ 2} Before trial proceeded in this matter, Blair waived his right to a jury trial in open court and agreed to a bench trial. Blair was tried with a co-defendant, Andrew Henry. During the discussion of a motion to suppress eyewitness identification, the prosecutor indicated he was not going to use the photo array or out-of-court identification. As a result of this stipulation, the court declared the motion to suppress was moot. The trial then began.
 {¶ 3} Antonio Early testified that on July 16, 2004, he was selling jerseys on Ansel Road in Cleveland. He was flagged down by some individuals to purchase clothes. There were about ten individuals around him. Early stated that he was then robbed by a man with a gun. More specifically, he said that someone held a gun to him and stated, "Give me the jerseys, drop the jerseys," or something to that effect. As the man made the comments to drop the jerseys, Early froze and another individual took the jerseys. Early gave chase to the man who took the jerseys and was able to snatch the bag of jerseys. He retrieved all but four of the jerseys.
 {¶ 4} The same day, Early reported the incident to the police. He provided the names of Tony and Terry to the police. Early stated that these names were provided to him from others who witnessed the incident. Early also indicated that he did not know the actual names of the people involved in the incident, but knew only their street names.
 {¶ 5} Early testified that although he knew the defendants from the neighborhood for seven or eight years in a general sense, he did not know them personally. However, Early testified that he would recognize the defendants if they were walking down a street downtown. When asked whether he knew the individual who was holding the gun during the robbery, Early responded, referring to the defendants, that "I thought it was one of the individuals that was right over there, but it was not, because there was a lot of individuals, like ten or 11."
 {¶ 6} Early claimed that two or three days following the incident, one of the individuals from the robbery pulled a gun out on him on East 79th Street and Pulaski Avenue and said something about Early having gone to the police. Early indicated that the individual was supposed to have been Terry Blair; however, at trial, Early claimed he did not know who the individual was who intimidated him. Early also claimed that he was not afraid during this encounter.
 {¶ 7} Early further claimed at trial that the people who had actually robbed him were still out on the street. He stated that nobody was pressuring him to change his story and that he had not received threats or bribes from anyone to influence his testimony.
 {¶ 8} Early also indicated that he had communications with Tony's mother on the street about a month before trial. Early stated that this occurred after he had called the detective to report that he had identified the wrong people. Early claimed that he informed Tony's mother that he had identified the wrong people. Early then wrote an affidavit in which he stated that "Andrew Henry was not one of the individuals who robbed me in July." Andrew Henry is known as Tony. The affidavit was written after Early spoke to Tony's mother and makes no mention of Terry Blair. Early claims he wrote the affidavit because he had already tried to explain the circumstances to the detective and he wanted to make a straight record.
 {¶ 9} Officer Chris Tewes testified that he responded to the incident and found Early to be visibly upset. Early advised Officer Tewes that he was selling jerseys and two people had just robbed him, one with a gun. Early also stated that one of the men had grabbed his bag of jerseys, and when the two men fled on foot, Early chased the man who had the bag. Early informed the officer that he knew the two men from the neighborhood and did not understand why they would do something like this because he knew who they were and has known them for years. Early did not identify the defendants as being the robbers in Officer Tewes' presence.
 {¶ 10} Although Early indicated that one of the robbers had a tattoo of "Tony" on his arm, no follow-up was conducted to determine if Andrew Henry, aka Tony, had a tattoo. At trial, Early indicated that he could not remember if the individual who robbed him had a tattoo.
 {¶ 11} Clearly perplexed by the change in Early's statements and despite the parties' stipulation to exclude out-of-court identifications, the trial court began to question Early about his identification of the individuals to the police. Early never made an in-court identification that the defendants were the men who robbed him. Rather, throughout his testimony, Early claimed he was absolutely positive that the defendants were not the individuals who robbed him.
 {¶ 12} The trial court found Blair guilty as charged. The court merged the two aggravated robbery counts and sentenced Blair to a maximum ten-year prison term to be served consecutively with a sentence of three years on the firearm specification. The court also sentenced Blair to a maximum five-year prison term on intimidation charge, to be served consecutive to the sentence for aggravated robbery.
 {¶ 13} Blair has appealed his conviction and sentence, raising seven assignments of error for our review. Blair's first assignment of error provides:
 {¶ 14} "I: The trial court was without jurisdiction to conduct a bench trial because the requirements of R.C. 2945.05
were not strictly followed."
 {¶ 15} Crim.R. 23(A) provides in relevant part: "In serious offense cases the defendant before commencement of trial may knowingly, intelligently and willingly waive in writing his right to a trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney." The manner in which a defendant may effect a jury waiver is further specified in R.C. 2945.05, which provides in relevant part:
"In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. * * *
"Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of trial."
 {¶ 16} Blair claims that the jury waiver in this case was not valid because a written jury waiver was not executed in open court and was not filed prior to the commencement of trial, and because the trial court did not file a journal entry before trial.
 {¶ 17} This court recently addressed the issue of jury waivers in open court in the case of State v. Pace, Cuyahoga App. No. 84996, 2005-Ohio-3586. In that case, we recognized that "Crim.R. 23(A) and R.C. 2945.05 are satisfied when, after arraignment and opportunity to consult with counsel, defendant signs a written statement affirming that he or she knowingly and voluntarily waives his or her constitutional right to a trial by jury and the court reaffirms this waiver in open court." This court further held that "[i]t is not necessary that a jury waiver be signed in open court to be valid," and that "[t]here is no requirement that [the waiver] be filed and placed in the record before trial." Pace, supra. "What the statute requires is that the trial court engage in a colloquy with the defendant such that the judge can make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right." Id.
 {¶ 18} The record in this case reflects that Blair signed a jury waiver prior to trial. Before trial began, the trial judge engaged in a colloquy with Blair about the waiver he signed. In the waiver, Blair indicated that he voluntarily and knowingly waived and relinquished his right to a jury trial and elected to be tried by a judge. He also indicated he understood he had a constitutional right to a jury. Blair confirmed in open court that he had signed the waiver and reviewed it with his lawyers. He further indicated he had no questions in reference to the waiver and acknowledged that by signing the waiver he was consenting to having the case tried to the judge. After this discussion, the court accepted the waiver. The voluntary waiver and order were filed in the court.
 {¶ 19} Upon our review, we find the trial court's colloquy with Blair was sufficient to satisfy the requirements of R.C.2945.05. Blair's first assignment of error is overruled.
 {¶ 20} "II: The evidence was insufficient to support the convictions."
 {¶ 21} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law. See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The relevant inquiry in a claim of insufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 22} This case comes down to a matter of identity. Blair argues that the evidence presented was insufficient as a matter of law to establish his identification as one of the robbers. The record reflects that immediately prior to trial the prosecutor stipulated that he would not use "the photo array or the out-of-court identification." Upon this stipulation, the trial court marked a motion to suppress eyewitness identification as moot.
 {¶ 23} The only witnesses who testified at trial were Early and Officer Tewes. Early testified that the names he provided to the police were provided to him from witnesses on the street. He adamantly denied that the defendants were the robbers. Officer Tewes testified that he did not catch anyone in regard to the incident, he did not recover a gun, and he did not know who committed the crime. Officer Tewes further testified that Early did not identify the defendants in Tewes' presence.
 {¶ 24} Although Blair argues that the trial judge improperly questioned Early about out-of-court identification, the record indicates the trial judge was attempting to clarify Early's trial testimony. The court stated that Early had identified the defendants twice, once when the crime occurred and again three days later. Defense counsel objected to any out-of-court identification being used, and the court stated that it was just asking about Early's testimony so the trier of fact could understand it. The court proceeded to ask Early whether he had provided names the first time he went to report the crime, and Early indicated he did. The court then asked whether Early had identified Blair as the person he encountered three days after the incident. Early responded, consistent with his earlier testimony, that he "said it was one of the individuals that had the gun."
 {¶ 25} While we understand and acknowledge the good faith effort by the trial court to arrive at the truth, based on our review of the record, we find there was insufficient evidence to establish Blair was one of the two people who robbed Early and was the person who intimidated Early. We recognize that Early provided first names to the police, and these were the first names of the co-defendants in this case. However, Early testified that these names were provided to him by other witnesses on the street. Early also stated he was familiar only with street names. Even though Early was familiar with the defendants from the neighborhood, he positively denied that the defendants were the two individuals who had robbed him. There was simply no in-court testimony that established Blair committed the charged crimes, and the prosecutor agreed that no out-of-court identification would be introduced. In the absence of any identification evidence, beyond a first name purportedly provided from someone on the street, we find there was insufficient evidence to establish that Blair committed the charged offenses.
 {¶ 26} Had the evidence involving the prior out-of-court identifications been admitted, an argument could have been made that the apparent conflict between Early's initial statements to police and his subsequent testimony at trial raised a question of fact that could have been resolved by the trial judge sitting as the trier of fact. The decision, by stipulation, to preclude any use of the prior out-of-court identification evidence prevented the use of that evidence to legally establish the element of identification in this case.
 {¶ 27} Although this court is disturbed by the factual pattern in this case, which suggests an intimidation may have occurred, there is clearly insufficient evidence of identification in this case.
 {¶ 28} Blair's second assignment of error is sustained. The remaining issues and assignments of error are moot.
 {¶ 29} Judgment reversed. We remand this case to the trial court to vacate the conviction and sentence, and enter a judgment of acquittal.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., concurs;
 Dyke, P.J, concurs in judgment only.